UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KIM LEWIS,

       Plaintiff,

  -vs-           **No. 1:13-CV-01152 (MAT)**
                 **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
       Defendant.

---

## I. Introduction

Represented by counsel, Kim Lewis ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

## II. Procedural History

The record reveals that in December 2010, plaintiff (d/o/b June 3, 1961) applied for DIB, alleging disability as of January 17, 2010. After her application was denied, plaintiff requested a hearing, which was held before administrative law judge Robert T. Harvey ("the ALJ") on August 8, 2012. The ALJ issued an unfavorable decision on September 5, 2012. The Appeals Council

denied review of the ALJ's decision and this timely action followed.

**III. The ALJ's Decision**

Initially, the ALJ found that plaintiff met the insured status requirements of the Act through March 30, 2015. At step one of the five-step sequential evaluation process, see 20 C.F.R. § 404.1520, the ALJ determined that plaintiff had not engaged in substantial gainful activity since January 17, 2010, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the severe impairments of status post anterior cervical discectomy and fusion at C5-C6, cervical pain with radiculopathy, and degenerative disc disease of the thoracic and lumbar spine. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she could not lift or carry more than 10 pounds; she had occasional limitations in bending, climbing, stooping, squatting, kneeling, and balancing, with no climbing of ropes, ladders, or scaffolds and no crawling; she had ccasional limitations in the ability to reach in all directions, with her non-dominant (left) upper extremity, and occasional limitations in pushing or pulling with the upper extremities; and she could not work in areas where she would be exposed to cold or dampness. At step four, the ALJ found that

plaintiff was capable of performing past relevant work as a substance abuse counselor and caseworker, which jobs did not involve the performance of work-related activities precluded by her RFC. Accordingly, the ALJ found plaintiff not disabled and did not proceed to step five.

## IV. Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A. Credibility

Plaintiff's primary contention is that the ALJ failed to properly assess her credibility. Plaintiff argues that the ALJ "cherry picked" testimony that supported his credibility finding and failed to consider her work history in reaching his credibility determination. "Generally speaking, it is the function of the ALJ, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 113 (2d Cir. 2010) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). The ALJ is required to consider all of

the evidence before him, including the plaintiff's testimony, in reaching his credibility determination. See id.

In reaching his credibility finding in this case, the ALJ summarized plaintiff's testimony as well as her treatment notes including objective medical evidence. He noted that plaintiff testified that her "activities of daily living ["ADLs"] [included] doing puzzles 3 to 4 hours per week, driving a car 15 miles per week, cleaning, cooking, vacuuming, sweeping, attending church and visiting friends," and found that these ADLs were "inconsistent with the allegations of disability." T. 15.

The ALJ summarized evidence indicating that plaintiff underwent an anterior cervical discectomy and fusion at C5-C6 in January 2005, after which she returned to full-time work. The ALJ noted that plaintiff pursued relatively conservative treatment, indicating to treating sources that she did not wish to pursue surgical intervention, and instead treating primarily with pain medication. In December 2009, pain management specialist Dr. Andrew Matteliano continued plaintiff on hydrocodone for pain, and noted that she would "continue with the exercises and go to the chiropractor." T. 311. In treatment with Dr. Matteliano throughout 2012, plaintiff continued to be prescribed hydrocodone and Soma, as well as moist heat and exercises. On physical examinations, plaintiff demonstrated tenderness and some limited range of motion of the cervical spine and trapezius muscles bilaterally.

The ALJ also considered the results of diagnostic imaging tests. In January 2010, a cervical spine MRI revealed development

4

of a new C4-C5 disc degeneration "with a minimal annular disk bulge" and "increased mild broad-based C6-C7 disk herniation." See T. 302. The ALJ gave this MRI "significant weight." T. 15. Additional imaging studies performed in 2011 and 2012 indicated mild spinal canal stenosis at L3-L4 and L4-L5, with no evidence of foraminal stenosis; minimal degenerative changes of the left sacroiliac joints; facet joint degenerative changes at the L4-L5 and L5-S1 levels; moderate degenerative disc disease at T10-T1 and T11-T12; minimal degenerative disc disease at the L1-L4 levels; multilevel degenerative disc disease with small disc herniations and mid/lower facet arthrosis, "although the lumbar canal caliber remain[ed] adequate," T. 408; and bulging and disc protrusion combined with spurring, encroaching on multiple neural foramina, especially on the left. As the ALJ noted, imaging tests did not indicate nerve root or significant thecal sac compression of the lumbar spine.

In February 2011, Dr. Donna Miller performed a consulting examination at the request of the state agency. On physical examination, Dr. Miller noted that plaintiff was in no acute distress; her gait was normal; she could walk on heels and toes without difficulty, had a full squat, normal stance, and used no assistive devices; she needed no help changing for the exam or getting on or off the exam table; and she was able to rise from her chair without difficulty. Plaintiff had "some cervical and paracervical tenderness" at C5-C7 and demonstrated decreased range of motion ("ROM") of the cervical spine. T. 319. Straight leg

raising ("SLR") test was negative. Plaintiff had reduced ROM of the shoulders, but full ROM of the elbows, forearms, and wrists bilaterally, with full range of motion of the hips and ankles bilaterally. Dr. Miller diagnosed chronic neck pain, status post cervical fusion; sleep apnea; obesity; and tobacco abuse; all with a stable prognosis. Dr. Miller opined that plaintiff had "moderate limitations for repetitive heavy lifting, reaching, pushing and pulling." T. 320.

The Court has reviewed the administrative transcript, including plaintiff's testimony at her hearing. Although the ALJ's decision does not give a thorough summary of plaintiff's testimony, he did not err in pointing out that plaintiff's ADLs included cleaning, cooking, vacuuming, sweeping, attending church, visiting friends, and driving. Plaintiff testified that she cleaned and cooked "[l]ightly," "tr[ied]" to sweep and vacuum, went to church and visited friends, drove a car approximately 15 miles a week, and bathed and dressed herself although it was "difficult." T. 40-41. In a function report completed for purposes of her application, plaintiff averred that although her son helped her with chores around the house, she did "light work" including "some cleaning." T. 167-68.

Although the ALJ could have given a more balanced summary of plaintiff's testimony, in which she stated that she had difficulty with many ADLs and suffered from constant pain, the Court concludes that the ALJ's credibility finding was supported by substantial evidence, including plaintiff's own testimony, objective medical

6

evidence, and the consulting opinion of Dr. Miller. See <u>Stanton v. Astrue</u>, 370 F. App'x 231, 234 (2d Cir. 2010) ("We have no reason to second-guess the credibility finding in this case where the ALJ identified specific record-based reasons for his ruling.").

Plaintiff also argues that the ALJ failed to properly consider her work history in considering her credibility. However, it is clear from the decision that the ALJ was aware of plaintiff's work history and found her partially incredible in spite of that history. "No different conclusion is warranted by the ALJ's failure to reference specifically [plaintiff's] good work history [in his credibility discussion], because substantial evidence aside from work history supports the adverse credibility ruling." <u>Id.</u> (citing <u>Schaal v. Apfel</u>, 134 F.3d 496, 502 (2d Cir. 1998)).

Finally, plaintiff argues that the ALJ failed to properly consider the applicable regulatory factors, see 20 C.F.R. § 404.1529, in reaching his credibility determination. The Court finds, however, that the ALJ's credibility discussion indicates that he used proper standard in assessing credibility, especially in light of the fact that he cited the relevant authorities in that regard. See <u>Britt v. Astrue</u>, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility). Moreover, "[a]lthough the ALJ did not explicitly discuss all of the relevant factors, [plaintiff] has failed to point to any authority requiring him to do so. In any event, the ALJ cited the applicable regulation, 20 C.F.R.

7

§ 404.1529, explicitly mentioned some of the regulatory factors [such as plaintiff's ADLs and course of treatment], and stated that he considered all of the evidence required by § 404.1529." Pellam v. Astrue, 508 F. App'x 87, 91 (2d Cir. 2013). Accordingly, the Court finds that the credibility determination was supported by substantial evidence.

### B. Vocational Expert Testimony

Plaintiff next contends that the ALJ "fail[ed] to credit" answers given by the vocational expert ("VE") in response to the various hypotheticals posed by the ALJ. See doc. 15-1 at 11-12. In response to a first hypothetical posed by the ALJ, which included limitations on sitting and standing, the VE testified that such an individual could not perform any of plaintiff's past relevant work. The ALJ then revised the hypothetical to describe an individual consistent with his ultimate RFC finding; the VE responded that such an individual could perform plaintiff's past relevant work of substance abuse counselor and case manager.

Plaintiff's argument hinges on an underlying contention that the ALJ's RFC was unsupported by substantial evidence. See doc. 15-1 at 12 (arguing that the "RFC was faulty in that it did not reflect the objective evidence and testimony[,] [n]o sit/stand limitation was given, no limitation as to twisting of the neck was given, [and] no usage of a cane was mentioned"). However, the Court finds that the RFC was supported by substantial evidence, in that it was consistent with the medical record as a whole and with the opinion of consulting examiner Dr. Miller, who found limitations

only as to heavy lifting, reaching, pushing, and pulling – but no limitations as to sitting and standing. See Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence.") (citing Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (per curiam)). The hypothetical posed to the VE was consistent with Dr. Miller's findings as well as the RFC found by the ALJ, and the ALJ was therefore entitled to rely upon the VE testimony in making his step four finding. See Thompson v. Astrue, 2013 WL 265239, *5 (W.D.N.Y. Jan. 23, 2013)).

## V. Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 15) is denied and the Commissioner's motion (Doc. 17) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED**.

**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   March 18, 2017
         Rochester, New York